Case number 20-1775. Michael Short v. Basil Simon. All arguments not to exceed 15 minutes per side. Mr. Thomas R. Morris for the appellant. Thank you. May it please the court. Thomas Morris on behalf of the appellant, Dr. Michael J. Short. I reserve four minutes for rebuttal, please. Right. We are asking the court to reverse the bankruptcy court's judgment in favor of the trustee and against Dr. Short. Judgment was entered on three separate theories on four counts of the complaint. The policy issue that unifies all three judgments is whether the law discourages a business owner from loaning money to a business to preserve it. The fundamental policy of our bankruptcy laws, likewise, is to help preserve the rehabilitation, facilitate the rehabilitation of a troubled business. The policy issue in this specific case is whether we should discourage a doctor like Dr. Short who invests in a community hospital in Pontiac so that it can continue to employ persons to serve the community, to pay its creditors, to upgrade the building, to buy equipment, whether we should punish him for doing that. The three judgments entered by the bankruptcy court in this matter got that policy horribly wrong backwards. Is the underlying question whether there were loans made or capital contributions made, is that the basic question? That is the basic question with respect to counts three and four in particular and also count one. Count one of the complaint was for the recharacterization of Dr. Short's claim. Dr. Short had loaned to the hospital approximately $1,600,000, had been repaid approximately $571,000, and was owed approximately $900,000 to $1 million. He filed a proof of claim for that amount. The bankruptcy court disallowed the claim based upon it being recharacterized using the auto style factors. This was erroneous for several reasons. First of all, the bankruptcy court misapplied Rule 56. The recharacterization was granted on the trustee's motion for summary judgment, but the court failed to construe the most favorable to the non-moving party, Dr. Short. If you could clarify something for me, just a factual matter. I know that there was an evidentiary hearing. Did that hearing not involve these issues for counts one, three, and four? The evidentiary hearing involved one issue, which was whether the so-called advances were loans or whether they were capital contributions. The trustee had the burden of proof to show that they were, as he contended, capital contributions. After the evidentiary hearing, then, did the bankruptcy court issue what we might call a trial opinion, an opinion not based on summary judgment but based on the evidence, and found that they were capital contributions? It did, except the bankruptcy court correctly found that of the loans, those for which a signed note was still in existence, for which a signed note had been found, were loans. The bankruptcy court ruled that the rest of the advances were capital contributions. I don't understand your summary judgment point if the ruling that the bankruptcy court made was based on the evidentiary hearing. The evidentiary hearing was supposed to be on the single issue of whether the loans were loans or capital contributions. The bankruptcy court now, I'm sorry, it's rather complicated. With respect to count one, the bankruptcy court took this evidentiary hearing, which was supposed to be on that issue, and then applied the so-called Roth factors to it, which are 11 factors, including whether there's a sinking fund, for example, applied those to this set of evidence, and then granted judgment on count one based upon that, and also granted judgment on counts three and four. It was a confused procedure, but the trustee argues what's wrong with the bankruptcy court issuing judgment on counts one, three, and four based on the evidentiary hearing. I'm puzzled. I don't understand your theory here. What's wrong with the bankruptcy court issuing judgment? I'll address count one first. On count one, the so-called re-characterization factors of Roth-Steele were not an issue at the evidentiary hearing. They were not in the final pretrial order. Only one issue was in the final pretrial order, and that was whether there were notes. Are there any facts that you think are relevant to the Roth-Steele factors that were not brought out at the evidentiary hearing? Yes, there would be, if Roth-Steele applied at all. What are the facts that were not brought out? Well, for example, the debtor's financial status, its loan to certain financial ratios. In auto style, one of the factors is financial ratios. Financial ratios were not discussed at all. The presence of the sinking fund was not discussed at all. The use of the funds was not an issue. Do you have evidence that there was a sinking fund? No. No, there was not a sinking fund, Your Honor. Then that's a finding that there doesn't appear to be any evidence to dispute that finding by the district court, correct? We have no evidence to dispute that finding. That is true. We do argue that on count one, count one is re-characterization, and the Roth-Steele factors are not applicable. There is no such thing as re-characterization is what we're contending. There's a case called auto style. In dicta, this court said that re-characterization is a power that the bankruptcy court has. We are arguing that auto style should not be followed, that dicta should not be followed. This court has never upheld the imaginary power of re-characterization in a bankruptcy court. Are you saying then that because you call these things loans that the bankruptcy judge has to view them as loans? Well, not only because my client calls them loans, but because all of the facts show that they are loans, and no fact showed that they were capital contributions, and the trustee had the burden of proof on that. The trustee introduced no evidence, not one bit of testimony, not one exhibit to show that these were capital contributions. Moreover, on counts three and four, the bankruptcy court applied the Roth-Steele factors. The issue was governed by Michigan law. The parties on the court, well, the trustee didn't agree. The court ruled that it was governed by Michigan law, and then the bankruptcy court then took a wrong turn and applied the Roth-Steele factors, which differ from Michigan law. They're inconsistent with Michigan law. Michigan law looks to the intent of the parties. Now, back to your question. It was clear that Dr. Short's intent would be that they were loans, and it was clear also that the other party to these loans, the hospital, that its intent was that they would be loans. You have to look at how does an organization like that exhibit its intent. Number one- But normally, through signing the promissory notes. I mean, what was with that? Why didn't they sign the promissory notes? They did sign the promissory notes. The testimony was that the promissory notes were signed for each of the loans, and there was no testimony to contradict that. Dr. Short- Where are the signed promissory notes if they were signed? The signed promissory notes, apart from two, have been lost, and there was testimony on that. The debtor had copies. The testimony was that the hospital had copies- Why is the district court or the bankruptcy court entitled to conclude that perhaps they never existed in the first place? Isn't that a permissible inference from the fact that they don't exist, that they're not presented to the court? Dr. Short- No, but moreover, more importantly, the trustee had the burden of proof, and there was no evidence that they were capital contributions. The debtor's records show that they were loans. They were stated in the bankruptcy schedules as loans. Every witness testified that they were loans. No one testified that anything was a capital contribution, which were in the debtor's records. Separately, Dr. Short made a $250,000 capital contribution at the outset of the organization of the hospital. And we received- Did the documents, these promissory notes, have a repayment schedule in them? Dr. Short- They did. Each of the notes did, and we had copies. We had copies, unsigned copies of the notes at issue, and the bankruptcy court dismissed that. There's no explanation for the existence. Did you have evidence that the payments then from the hospital back to the doctor were made in accordance with the promissory notes? Dr. Short- They were, Your Honor. The testimony was, the evidence was that the notes were accounted for in an account. So they weren't tracked separately in the debtor's records. Rather, they were tracked, they were in an account. And when Dr. Short loaned money, that created a credit in the account, and when the debtor paid back money, it created a debit in the account. And so these payments were applied to the account. And the testimony was consistent with that. Dr. Short testified, for example, that he would ask from time to time, how much does the hospital owe me? And he always received an answer. Your Honor, there's no explanation for the unsigned notes, other than that there was some intention that there be notes. And these unsigned notes were produced in discovery by the trustee from the hospital's records. Yet, yet the trustee objected to their admission, and the bankruptcy court has concocted a strange limitation on the purposes for which these unsigned notes were admitted. It's clear error. Thank you. You'll have your rebuttal time. Thank you. Mr. Alexey. Good afternoon, Your Honors. Stephen Alexey appearing on behalf of the plaintiff, Appley Basil Simon, the liquidation trustee for the Oakland Physicians Medical Center Liquidation Trust. There's a lot to address in what Mr. Morris has provided you today. I'll begin with, to the extent that we were talking about the hearing itself that was held by the bankruptcy court, it resulted in an over 50-page opinion after trial with, as one might expect, substantial references to the evidence that was produced at the hearing. Prior to that, there was a final pre-trial order. Mr. Morris expresses his opinion that, in fact, this was not an issue for the hearing. This is exactly what the hearing was about. And in fact, I'm looking at the joint final pre-trial order that was entered in the bankruptcy court, and one of the issues expressed was in the absence of fully executed promissory notes, can Dr. Short enforce the concept that his advances should be treated by the bankruptcy court as loans rather than capital contributions? That was the issue at the hearing, and we presented evidence based on this court's ruling in the autofile plastics case. Again, Mr. Morris characterizes the vision on re-characterization as being dicta. Well, to part of that decision. You need to speak up into the microphone. Your words are being lost. I apologize, your honor. It's difficult for me to manipulate the technology. And I know I know I share your pain. So let me say again, autofile plastics directly addressed re-characterization. All the Roth steel factors were applied in that case. They were applied in our case. But I was going to point out one statement from this court at 269 Fed Third at 748, where it says that re-characterization cases, quote, turn on whether a debt actually exists, not on whether the claim should be equitably subordinated. And that analysis as to whether a debt actually exists really relies on a reference to state law. In this case, Michigan law, as it relates to notes and deaths. And that was something why aren't these things loans? Your opponent argues that he made quote loans that the loans went into one pot for the hospital and then the hospital paid back and and that this should be viewed as an account that would be considered a loan as opposed capital contribution. Right. And there were expressed requirements not only under Michigan law, but in the in the operating agreement for the debtor as to how loans were to be made. There were requirements prior to any loans being made under the operating agreement, and there was no showing whatsoever that any of those requirements were met as to all of the advances that the appellant in this case claims are loans. What kind of requirements? Could you be more specific? I can. And if you'll bear with me just a moment, let me. So the Oakland Physicians Medical Center restated operating agreement, which we attached to our first motion for summary judgment, required a super majority vote of the board of directors for decisions regarding incurring any working capital loan or line of credit. That's the operating agreement of paragraph eleven point two a. It goes on to say at paragraph eleven point three a only the board had the authority to borrow money, provided that prior to borrowing money from any member. And Dr. Short was a member. All members should be given the opportunity to participate in such loans in proportion to their distributive shares. There were no minutes whatsoever, no minutes regarding any of these procedures being followed as to any of the so-called loans by this defendant at the hearing. Deposition requirements under the operating agreement for for new capital. Your Honor, I'm sorry. Were those formalities followed here to show new capital? That I don't know. I've not brought the entire operating agreement with me. And that kind of goes to my general concern about the case. I think that the bankruptcy courts rely on the fact of lack of formalities to show a loan. But there's an obvious question is were any of the formalities followed to show equity going into the company? I cannot answer your question. I can say this though about the loans at the hearing and at the deposition of Dr. Short. He was specifically asked these payments that you receive from the debtor. What loan did they apply to? He did not know. He could not correlate any of the payments with any of the so-called loans. And with regard to our... Why is that important? If he made 20 loans over a period of time and the hospital is paying him amounts, why does it matter which loan they're... Well, because what is a loan? Under Michigan law, what is a loan? A loan is an obligation that the borrower undertakes to repay money, that so-called loan, a definitive promise. What is that promise? Well, we have unsigned notes. We couldn't correlate any of those transfers to the unsigned notes. Assuming the notes were signed, there would be a definite obligation by the borrower, the debtor in this case, to repay the person who loaned the money on a certain date at a certain rate of interest. None of that is proven here. None of that was a rate of interest in them? The unsigned notes, some of them did, and none of it was followed. And you can tell that because you can see this from the amounts that were put into the account? Is that it? Well, there's no correlation between money's advanced and then money's paid back. There's no correlation whatsoever to the notes, and that was part of the hearing. Please correlate these monies you received with these notes. It could not be done, and that's spelled out in the bankruptcy court's opinion after trial. None of this could be correlated. If they were capital contributions, why would the hospital be paying him back? I don't know. We have the testimony from Dr. Singal, who's the chairman of the board, that they were essentially just giving money back to these board members at the discretion of the board. So what is it? Part of what the bankruptcy judge points out that to the extent that there's some claim that some of this money might be interest being repaid, even those amounts don't match. The defendant, Dr. Short, claimed a small amount in the year in which he received a number of transfers back that have no correlation whatsoever to interest rates in the notes. But I think the most problematic part for the defendant in this case, and we attached it to our response to one of the motions for summary judgment, and it came out at the hearing, was an affidavit that Dr. Short filed in another case in the Oakland County Circuit Court in Michigan. One of the other board members had notes. He had notes, they were all signed, and he filed suit against the hospital. His name is Dr. Jolly, and he won because he had the notes. He filed a complaint, he had the notes, and he attached them. And I was going to say, what gives rise to this case is that Dr. Short filed a proof of claim and claimed money's owed for money's loan. The bankruptcy code requires you to attach to your proof of claim, if it's based on something in writing, the writing. Nothing was attached to the proof of claim. The trustee objected to the proof of claim, and then this adversary proceeding followed. But let me get back to- Could I interject a question here? In your briefing, there's reference to limitations on the extent to which the members could increase their capital participation. How does that play in here? Right. In fact, thank you, Judge, because you actually are leading me to where I was going anyway. So in this Oakland County Circuit Court case in which Dr. Jolly had sued the hospital, this defendant, Dr. Short, submitted an affidavit attempting to defeat a motion for summary judgment. So Dr. Short said in his affidavit that, in fact, they had to- I'm going to read from paragraph five of the affidavit. If the doctors who owned the hospital did not provide additional funds, doctor's hospital would have necessarily failed to meet such critical financial needs or liquidated. As an expedient method of documenting the contributions- he doesn't use the word loans- contributions that Drs. Jolly, Singal, and I made, we reflected the- his words- cash contributions in promissory notes issued by doctor's hospital. He goes on to say that, in fact, they had to do that because they as a result of that. Dr. Short goes on to say in paragraph six, although the notes provide for payment at the expiration of their stated terms, I can assure the court that this language does not fully and accurately represent the terms of contemporaneous and subsequent agreements between Dr. Jolly, Dr. Singal, me, and the hospital. As Dr. Singal points out, we all knew and understood that doctor's hospital did not have funds to repay notes on demand. So, he goes on to say, whatever these notes are, ignore them. We have other agreements. They really aren't what they appear to be. And it's all in his affidavit. And that affidavit was something we relied on in our motion for summary judgment and at the hearing as to whether or not these are capital contributions or advances. Why is this important in terms of a fraudulent transfer analysis? Our motion for summary judgment on the fraudulent transfer, we had to prove that there was no reasonably equivalent value given for the monies which the hospital paid out to Dr. Short. If you're going to say that this is a repayment on a loan, and that's a reasonably equivalent value, tell us which loan. And the defendant could not raise an issue of material fact to show that any reasonably equivalent value was given in exchange for the payment or payments which Dr. Short received over time. I may have misunderstood Judge Batchelor's question. I thought she was asking you, was there some sort of a limitation on the ability of the hospital to issue new equity? I don't know the answer. I can't answer that question. I don't know the answer. Was there ever anything reflected in the equity or the capital of the hospital? Was there any documentation ever shown that equity increased for Dr. Short as a result of these contributions? To the best of my knowledge, the answer is no. There apparently was at some point in time, they were going to issue new equity if I recall correctly, and then there was a decision made that essentially, well, we'll take that money which was going to reflect as new equity, and let's just turn it into loans. Again, no notes, nothing to memorialize this. I didn't do that well in accounting, but I always thought it's either a loan or an equity that you get money into a company. Is there some other way that you get money into a company? I suppose it could be a gift. I'm not suggesting that's the case here. Okay. I will point out that that problem is- I read that affidavit as saying basically, it could be read to say, I made a loan. I didn't expect to get paid back, but that's what it was. It was a high risk loan basically. My point being that for a fraudulent transfer analysis, when that transfer is made, we showed there was no reasonably equivalent value made for that transfer because per this affidavit, no money was owed. No money was owed. I'm talking about the contribution made by short to the hospital. Correct. Well, I'm sorry, your honor. When you're talking about preferential transfer, you're talking about the payment made by the hospital back to short later. I'm talking about the initial payment by short to the hospital, trying to understand why that's not equity. I think your argument is that the formalities for a loan were not met. Correct. Okay. I guess for me, the concern is, is that enough? Do you still have to have some evidence that there was actual equity being given to Dr. Short before you can find that it was equity, not a loan? Our analysis is, and we should be clear about our terms. We have summary judgment on a preference, which is three different transfers and summary judgment on fraudulent transfers. Our analysis with regard to the fraudulent transfers is that for each of these transfers, there was no reasonably equivalent value given because there was no money owed at the time of the transfers. If we find it was a loan, then there actually would be consideration for the repayment. Then that begs the question, what payment, what loan was this repaying? Was there any money owed on the loan at the time the transfer was made? There's no evidence to show that any of these payments correlates to any of those notes, correlates to any of these so-called loans. Therefore, no reasonably equivalent value and summary judgment was properly granted on the questions. Thank you. Mr. Morris, your mute is on. I apologize. Sure, Your Honor. Correlation is an utter red herring. There's no support in that under Michigan law to say that if loans are made and the payee, the creditor on those loans in his later years cannot recall and correlate the loans, then it's not loans and it becomes a capital contribution. That's an absurd notion. Dr. Short testified that at one time, he could correlate these. At one time, he knew what loans were being repaid. He also testified that he spent the last nine months, I'm sorry, nine of the last 18 months in the hospital. I'm not talking about working in the hospital. I'm talking about being in a hospital bed with tubes out of various orifices near death. He also explained that that's why he did not have the signed notes. He was a practicing doctor, went into the hospital, nearly died. People went through his office and closed his office and put papers in places where he couldn't find them. Your Honor, on the final pretrial order, there's so many issues here. On the final pretrial order, Mr. Alexie is relying upon one garbled sentence to say that all these issues, whatever issue he wants to have come in under the final pretrial comes in. I encourage you to review that garbled sentence and see if it really holds all this weight. In auto style, the dicta was judicial dicta. It's extensive. I agree. This panel cannot overrule it, but it can decline to follow it. Retroactive recharacterization is what we're talking about with respect to counts three and four. On count one, it's regular recharacterization, which I argue does not exist. The bank's court is not authorized to do that, but on counts three and four, it's retroactive. This doesn't exist. It's unprecedented. It was called for, asked for in the trustee's complaint, and on my motion, that was dismissed and the trustee amended his complaint to no longer include it, yet the bankruptcy court resurrected this after the trial without it being identified in the final pretrial order and after it had been dismissed. That was unusual. Your Honor, also unprecedented is the out of proportion to the shareholders or the owner's equity. Dr. Short owned 6% of the hospital approximately, and he made a greater percentage of the loans. Your Honor, Michigan Law, I urge the court to review my brief. I've discussed Michigan Law. The requirements under Michigan Law to show a loan are not difficult. It's very easy. The trustee makes it sound like this is almost impossible showing for someone to make, but he ignores the fact that the trustee had the burden of proof. Also, the operating agreement has very specific, as Judge Bush was picking up on, the operating agreement has very specific requirements and provisions regarding the capital accounts, and I've addressed that in my briefs. These amounts of money that were transferred from your client to the hospital, could they be something other than debt or capital contributions? The only other possibility is a gift. There's no evidence. The only evidence, all the evidence was that they were loans. Your Honor, as far as the requirements under the operating agreement, the fact that they were supposed to offer the opportunity to other doctors to make loans, Dr. Short testified that other doctors had declined that opportunity, and it wasn't an issue at the trial. This is an ex post facto thing they're trying to raise, and they're trying to prove on it. Your Honor, may I finish? You may finish your thoughts. All of the notes had terms. The testimony was unanimous that the payments were loan repayments. The affidavit, I have two words to say about the affidavit, peri passu, and that's the explanation. When you read Dr. Short's language in the affidavit, he's saying that the loans were peri passu, and that's why Dr. Jolly shouldn't receive payment. Without the other doctors receiving payment, Dr. Jolly received a judgment. It forced the company into bankruptcy where the rule is peri passu, except if you're Dr. Short or Dr. Single and the trustee sues you, he sued none of the other doctors to challenge their loans. He sued the two doctors who objected to plan of reorganization. Thank you. Your time is definitely up. Thank you very much. Thank you. Thank you both for your argument and the case you submitted.